United States District Court
Middle District of Florida
Jacksonville Division

**MARCIA CROSSMAN,**

    *Plaintiff,*

v.                                                                       **NO. 3:19-cv-1081-J-39PDB**

**CARRINGTON MORTGAGE SERVICES, LLC,**

    *Defendant.*

# Order

    Marcia Crossman used to work for Carrington Mortgage Services, LLC. She now sues Carrington Mortgage for alleged race discrimination, disability discrimination, and retaliation. Doc. 7. She alleges she suffered emotional distress, mental anguish, loss of enjoyment of life, and inconvenience, and she demands back and front pay, compensatory and punitive damages, and attorney's fees and costs. Doc. 7. Carrington Mortgage denies liability and raises affirmative defenses. Doc. 9.

    The parties are unable to resolve a discovery dispute. Carrington Mortgage moves to compel Ms. Crossman to respond to requests for production of her Facebook and Instagram accounts and any online information she provided or to which she contributed that refers to Carrington Mortgage, the allegations, her mental state, and events "that could reasonably be expected to produce significant emotion, feeling, or mental state."[1] Doc. 19 at 1–3. Besides the complaint allegations, Carrington Mortgage highlights her claims that Carrington Mortgage caused her to suffer nervousness, high blood pressure, anxiety, insomnia, hyperventilation, and

---

[1] Carrington Mortgage limits the request to a five-year period. Ms. Crossman makes no complaint about the time period.

psychological impairments. Doc. 19 at 3. Carrington Mortgage also requests its expenses for bringing the motion to compel. Doc. 19 at 9.

Ms. Crossman originally raised the same objections for all the requests: "This request is overly broad, invasive, and not reasonably calculated to lead to the discovery of admissible evidence." Doc. 19 at 2–3. Following discussions between counsel, including about a confidentiality agreement, she supplemented her objections, stating she has no documents responsive to the request for production of online information she provided or to which she contributed that refers to Carrington Mortgage or the complaint allegations. Doc. 19 at 4. For the requests for production of her Facebook and Instagram accounts, she states:

> The request for full download of [her] social media profile will result [in] the production of several items that have no relevance, no materiality, and no bearing on any issue presented in this lawsuit. [She] asserts that matters of alternative sources of alleged mental anguish/emotional distress can be sought via less invasive means, including interrogatories or via deposition.

Doc. 19 at 4. For the requests for production of other online communications relating to "any emotion, feeling, or mental state," and "events that could reasonably be expected to produce significant emotion, feeling, or mental state," she adds the requests are "far too nebulous and ambiguous [of a] description for [her] to comply with th[ese] request[s]." Doc. 19 at 4–5.

In her response to the motion to compel, Ms. Crossman contends her social media accounts "will include a multitude of material, including … photographs, posts, location data, friends, search histories, private messages, payment histories, metadata relating to adverts and other marketable interests, etc." Doc. 21 at 1–2. She argues she has a privacy interest in her social media, and compelling the discovery would be akin to requiring her to open the door to her home and allowing Carrington Mortgage to rummage through it with abandon. Doc. 21 at 2–3. As a less "invasive" way to discover the information, she suggests deposing witnesses she disclosed who

2

can testify about her claims and defenses. Doc. 21 at 5. She observes she already disclosed "aspects of her life" in her answers to interrogatories, including a divorce and a foreclosure. Doc. 21 at 5. Besides the objections she previously lodged, she argues "disinterested" and "uninvolved" non-parties in her social media "should not be subjected to the discovery tools" of Carrington Mortgage. Doc. 21 at 2. She adds, "These sweeping requests are patently disproportionate to the needs" of Carrington Mortgage. Doc. 21 at 5.

Several Federal Rules of Civil Procedure govern the motion. And the Court is guided by the non-binding but highly persuasive Middle District Discovery Handbook.

Foremost, Rule 1 provides that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." The addition of "and the parties" places shared "responsibility to employ the rules in the same way." Fed. R. Civ. P. 1, Advisory Comm. Notes (2015 Amend.).

Rule 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." "Information within this scope of discovery need not be admissible in evidence to be discoverable."[2] Fed. R. Civ. P. 26(b)(1).

---

[2]The 2015 amendments to Rule 26 sought to eliminate for good the "reasonably calculated" standard:

> The former provision for discovery of relevant but inadmissible information that appears "reasonably calculated to lead to the discovery of admissible evidence" is also deleted. The phrase has been used by some, incorrectly, to

Rule 26(b)(2)(B) provides that a "party need not provide discovery of electronically stored information [(ESI)] from sources that the party identifies as not reasonably accessible because of undue burden or cost." On a motion to compel or for a protective order, "the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). If the party makes that showing, "the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)" ("the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)"). *Id.* "The court may specify conditions." *Id.*

Rule 26(c) provides a party from whom discovery is sought may move for a protective order, and the court may, for good cause, protect the party from undue burden or expense, including by forbidding the disclosure or discovery, limiting the scope of the disclosure or discovery, and specifying the terms for the disclosure or discovery.

---

define the scope of discovery. As the Committee Note to the 2000 amendments observed, use of the "reasonably calculated" phrase to define the scope of discovery "might swallow any other limitation on the scope of discovery." The 2000 amendments sought to prevent such misuse by adding the word "Relevant" at the beginning of the sentence, making clear that "'relevant' means within the scope of discovery as defined in this subdivision …" The "reasonably calculated" phrase has continued to create problems, however, and is removed by these amendments. It is replaced by the direct statement that "Information within this scope of discovery need not be admissible in evidence to be discoverable." Discovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery.

Fed. R. Civ. P. 26, Advisory Comm. Notes (2015 Amend.).

Rule 34(b)(2)(B) provides that for each item or category in a request for production, "the response must … state with specificity the grounds for objecting to the request, including the reasons." Rule 34(b)(2)(C) adds that an "objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." The Middle District of Florida Discovery Handbook adds,

> <u>Reading and Interpreting Requests for Documents</u>. An attorney receiving a request for documents … shall reasonably and naturally interpret it, recognizing that the attorney serving it generally does not have specific knowledge of the documents sought and that the attorney receiving the request or subpoena generally has or can obtain pertinent knowledge from the client. Furthermore, attorneys are reminded that evasive or incomplete disclosures, answers, or responses may be sanctionable[.]
>
> …
>
> <u>Objections</u>. Attorneys should not make objections solely to avoid producing documents that are relevant to the case or that are otherwise necessary to discover or understand … the issues. Absent compelling circumstances, failure to assert an objection to a request for production within the time allowed for responding constitutes a waiver and will preclude a party from asserting the objection in response to a motion to compel. Objections to requests for production should be specific, not generalized, and should be in compliance with the provisions of Rule 34(b), Federal Rules of Civil Procedure. Objections to portions of a document request do not excuse the responding party from producing those documents to which there is no objection. Specific objections should be matched to specific requests. General or blanket objections should be used only when they apply to every request. Boilerplate objections such as "the request is overly broad, unduly burdensome, and outside the scope of permissible discovery" are insufficient without a full, fair explanation particular to the facts of the case.

Handbook § III.A.3, 6.

Rule 37(a) provides that a party may move for an order compelling disclosure or discovery, including if a party fails to respond or provides evasive or incomplete responses to interrogatories or requests for production. If a court grants a motion to

compel discovery, … "the court must, after giving an opportunity to be heard, require the party … whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). "But the court must not order this payment if … the opposing party's nondisclosure, response, or objection was substantially justified … or … other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii), iii). Nondisclosure, a response, or an objection is substantially justified if reasonable people could differ on its appropriateness. *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997).

Under those standards, Ms. Crossman's original objections were improper. By using boilerplate objections, she failed to state with specificity the grounds for objecting, including all of the reasons she now provides in response to the motion to compel. She failed to state whether she is withholding any responsive materials based on her objections. And she used the outdated and problematic "not reasonably calculated" standard. *See* footnote 2 above. In her supplemental objections, for some requests, she continued to omit whether she is withholding any responsive materials based on her objections.

Giving Ms. Crossman the benefit of the doubt, the Court will consider her objections based on relevancy, privacy, and, for the general social media requests, vagueness. She makes no objection based on undue burden or costs in gathering ESI. The Court declines to consider her objection about the need to protect non-parties because she made that not in her original or supplemental objections but in her response to the motion to compel. The Court declines to consider her objection about proportionality for the same reason and because she provides no proportionality analysis.

On relevancy, common sense dictates that information in Ms. Crossman's social media, including her Facebook and Instagram accounts, relates to her contemporaneous mental and emotional states and therefore relates to the injuries

6

she claims she suffered at the hands of Carrington Mortgage, including loss of enjoyment of life. *See, e.g., Hinostroza v. Denny's Inc.*, No. 2:17-cv-02561-RFBNJK, 2018 WL 3212014, at *6 (D. Nev. June 29, 2018) (unpublished) (observing social media information reflects individual's contemporaneous emotions and mental state, examination of the information may reveal onset and degree of distress, and the relates to loss of enjoyment of life, citing cases). Ultimately, the factfinder will determine the significance of the information—or lack thereof—to her claims and defenses. On privacy, she has ceded some by sharing her personal information with others on social media and by bringing this lawsuit subject to the public right of access. To the extent she has not, a confidentiality agreement suffices to protect her interests, and the obligations of members of the Court's bar suffices to deter misuse of the information.³ On vagueness, her counsel can "reasonably and naturally" interpret the requests in view of the claims and defenses and through communication with opposing counsel to provide the information obviously sought. *See* Handbook § III.A.3 (quoted).

A confidentiality agreement minimizing intrusion into Ms. Crossman's private life dilutes her argument that Carrington Mortgage should obtain the information via a less intrusive means: deposing witnesses she has identified. In any event, she makes no showing that their testimony would equate to the information on her social media.

An award of expenses is unwarranted. Ms. Crossman was substantially justified in her objections or other circumstances make an award of expenses unjust: both sides find some support in caselaw for their respective positions, which indicates reasonable minds can differ on the dispute.

---

³As explained in a case management filing, "The parties may reach their own agreement (without Court endorsement) regarding the designation of materials as 'confidential.' The Court discourages unnecessary stipulated motions for a protective order. The Court will enforce appropriate stipulated and signed confidentiality agreements. *See* Local Rule 4.15." Doc. 8-1 at 5.

7

Carrington Mortgage moves for leave to reply to Ms. Crossman's response. Doc. 22. Counsel violated Local Rule 3.01(g). Counsel is reminded,

> Before filing any motion in a civil case, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, or to involuntarily dismiss an action, the moving party shall confer with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion, and shall file with the motion a statement: (1) certifying that the moving counsel has conferred with opposing counsel; and (2) stating whether counsel agree on the resolution of the motion.

Local Rule 3.01(g). Regardless, a reply is unnecessary.

The Court **grants** Carrington Mortgage's motion to compel (except regarding the request for expenses), Doc. 19, **directs** the parties to expeditiously confer about an appropriate confidentiality agreement if they have not already reached one, and **orders** Ms. Crossman to respond fully to requests for production 46, 47, and 50 by **May 11, 2020**. The Court **denies** Carrington Mortgage's motion for leave to reply. Doc. 22.

**Ordered** in Jacksonville, Florida, on May 4, 2020.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:   Counsel of Record